LEON L. LIBBY AND ALICE M. CORNFORTH,
Executors of Will of Semantha C. Jerrard, Appellants from Decree
of Judge of Probate,

*vs.*

ESTATE OF SIMON G. JERRARD.

Penobscot.    Opinion July 3, 1918.

*Wills. General rule of law where property is left to the widow for life with right to use whatever may be necessary for her support and maintainance. Right of remainderman to balance or remainder of property undisposed of or unexpended. How the rights of remainderman may be enforced. Executors and administrators. General scope and limitation of the authority of executors and administrators.*

Where the executrix of her husband's will is directed thereby to give by will in charity a sum not exceeding three-fourths part of what may remain of his estate at her decease and she makes the appointment by a will executed less than four months and confirmed less than forty days before her decease, and her executors find among the papers in her possession at her decease, a note given to her by her husband many years before, the balance due upon which practically equals one-half of what must have remained of her husband's estate at her decease to warrant her devise of the sums given in the exercise of the power in charity; it is held that her wills clearly indicate that she did not consider the note an existing claim against her husband's estate and did not intend to enforce it as such.

Where a testator gives to his widow a life estate in certain property with power of disposal and remainder over, whatever remains at the decease of the widow, upon due and proper accounting by her executors or administrators, should be paid or delivered to the administrator de' bonis non with the will annexed of the first testator.

It is the right and duty of an administrator to account in the Probate Court, in behalf of his intestate, as executor or administrator, but the accounting is limited to the acts and doings of the deceased representative in his lifetime and the administrator can proceed no further in the administration of the first intestate and so expressly by R. S., Chap. 68, Sec. 27, with executors.

Whether or not, in view of our statutory provisions regarding the allowance of the private claims of executors and administrators they may still exercise the common law right of retainer, quaere.

Appeal from ruling of Judge of Probate, Penobscot County, relating to allowance of Probate account. Appeal was duly entered at Supreme Court of Probate and at the close of evidence case was reported to Law Court upon certain agreed statements and stipulations. Judgment in accordance with opinion.

Case stated in opinion.

*Manson & Coolidge,* for appellants.

*Matthew Laughlin,* for himself, appellee.

*A. J. Merrill,* for Home for Aged Women.

SITTING: CORNISH, C. J., SPEAR, BIRD, HANSON, PHILBROOK, JJ.

BIRD, J. Simon G. Jerrard of Levant, in the County of Penobscot, died, testate, on the twenty-eighth day of January, 1909, at the age of eighty years, leaving a widow Semantha C. Jerrard and no issue. By his will, which bears the date of January 1, 1898, he appoints his widow executrix, provides for a monument on his burial lot, bequeathes certain personal property to relatives to be delivered at the decease of his wife or during her lifetime, at her election, certain personal property to be delivered the legatee in the usual course of administration, and two money legacies payable on the decease of his wife. The remaining items of the will are as follows:

"Ninth. All the rest, residue and remainder of the property of whatever name or kind of which I may die possessed, together with the use and proceeds during her lifetime of all property embraced in the foregoing bequests, I hereby give, devise and bequeath to my beloved wife, Semantha C. Jerrard for her sole and separate use for and during her natural life, with full power to use, dispose of, sell and convey any or all of it as she may desire, the same as I might do if living, and to dispose of by will, at her discretion, as a memorial fund in her own name and mine to be to be devoted to some charitable, benevolent or educational use, a sum not exceeding three-fourths part of what may remain of my estate at her decease. And I earnestly desire that my said wife during her lifetime shall despose of by gift to such of my relatives as are not specially named in this instrument all my household goods, pictures, silver, glass and crockery ware and all other articles which go to make up the furnishings of our home, so that none of said furnishings shall ever be desposed of by sale.

"Tenth. Watever may remain of my estate at the decease of my said wife, not disposed of by or under the foregoing proisions of this Will, after paying all her just debts, funeral expenses and the costs of administration, I give devise and bequeath as follows. To my sister Mrs. Jane L. Bennett, to my brother John F. Jerrard, to my brother Anson C. Jerrard, to my sister Mrs. Helen N. Jenkins and to my sister Mrs. Angelia J. Brackett each one seventh part. To my sister Mrs. Sarah G. Crosby the income of one seventh part during her natural life and at her decease said part to be divided equally between her son Ellery C. Crosby and her daughter Mrs. Ada M. Wing, and the remaining seventh part to be divided equally between Sanford C. Jerrard and Eva M. Jerrard son and daughter of my brother George W. P. Jerrard. . . . . ."

This will was duly admitted to probate in the Probate Court of Penobscot County.

After the decease of her husband, his widow Semantha continued to reside upon and operated the farm hereinafter referred to for about a year and a half. She then took up her residence with her niece, and the niece also of her deceased husband, Alice M. Cornforth, with whom she lived until her decease. Under date of August 16, 1911, Semantha C. Jerrard, of Pittsfield, in the County of Somerset, as the widow of Simon G. Jerrard, and avowedly for the purpose of executing the power of appointment given her by the ninth item of the will of her deceased husband, made a will by the first item of which she appointed Leon L. Libby, one of the appellants, executor. The second and remaining item follows:

"Second. I hereby give and bequeath the sum of four thousand dollars to the Home for Aged Women at Bangor, Maine, said amount to be invested in long time securities, more with a view to the safety of the principal than to the income, and said amount as invested to constitute a permanent memorial fund to be known as 'The Col. Simon G. and Semantha C. Jerrard Fund.' The annual income and no more of this fund shall be used for the general purposes of maintaining said Home and carrying out the purposes thereof.

"This legacy is to be paid from the property described in said ninth paragraph of the will of Simon G. Jerrard and is disposed of by authority of said paragraph."

On the twenty-fifth day of October, 1911, she made a second will which confirms that of August 16, 1911, makes sundry bequests of personal property and gives all the remainder of her personal estate to Alice M. Cornforth, whom she appoints executrix.

The widow, Semantha C. Jerrard, died aged eighty years, on the fourth day of December, 1911, without rendering any account as executrix of her husband's estate or filing any inventory thereof.

Both her wills were duly proved and allowed in the Probate Court of Somerset County, as one will, and letters testamentary issued to Leon L. Libby and Alice M. Cornforth, named as executor and executrix in the respective wills.

Subsequently, apparently on January 30, 1912, Mathew Laughlin Esquire, of Bangor, was appointed administrator de bonis non with the will annexed of Simon G. Jerrard.

The inventory of the Estate of Semantha C. Jerrard which was filed July 14, 1913 shows real estate $1000. goods and chattels $118.50 and rights and credits $6696.46 totalling $7814.96.

Without filing any inventory of the Estate of Simon G. Jerrard, as of the date of his decease, which perhaps was neither possible nor possibly needful, the executors of the will of Semantha C. Jerrard filed in the Probate Court of Penobscot County what purports to be the first and final account of Semantha C. Jerrard, as executrix of the last will and testament of Simon G. Jerrard.   It bears date of the fourth Tuesday of July, 1913.   In Schedule A. they charge the deceased executrix with "property which was in the hands of Semantha C. Jerrard at the time of her decease and had been the property or proceeds of property of the late Simon G. Jerrard."   As such appear sundry choses in action aggregating $1030, and further choses in action all substantially deposits in banks in the name of Semantha C. Jerrard and notes to her order aggregating $2698.81 making the total amount of Schedule A. $3728.81.

In Schedule B. the first item of credit is "Delivered to Mathew Laughlin, Administrator de bonis non with the will annexed of Simon G. Jerrard, the following assets listed in Schedule A: standing in the name of Simon G. Jerrard" in the aggregate amount of $1030.

The second item of credit is "Retained by Alice M. Cornforth and Leon L. Libby as Executors of the Estate of Semantha C. Jerrard, the remaining assets listed in Schedule A. towards payment of the following:

"To pay the balance due on the promissory note dated Levant, Jan. 18, 1888 signed by Simon G. Jerrard for value received promising to pay to the order of Mrs. Semantha C. Jerrard the sum of $3667.30 on demand with interest, on the back of which is endorsement of payment of $3200. on April 28, 1891; there being due on said note after computing the interest and deducting said payment, on Jan. 28, 1909, the date of the death of said Simon G. Jerrard, the sum of $2454.31.                                              $2454.31

"To pay as provided for in the last will and testament of said Simon G. Jerrard:

"Debt of Semantha C. Jerrard due James H. Crosby for store bill of $189.56, tax bill of 1910 for $34. and interest $20.34 less credit of $60. for stock and farming tools, $183.90   $2698.81

"Cost of administration of the estate of Semantha C. Jerrard, the commission due the executors of her will on her personal property appraised at $6814.96 at 5%,          $340.74

Services and expenses of Manson & Coolidge as attorneys for said executors,          500.00     840.74

                                         $3478.95   $3728.81

"Balance due from the estate of Simon G. Jerrard to the estate of Semantha C. Jerrard,       $780.14"

In July, 1916, the accountants moved to amend their account by substituting in Schedule B. for the sums of $340.74 and $500. ($840.74) the sum of $2474.30 according to the statement attached to their motion.   With few exceptions, the items in the statement are charges of administration of the estate of Semantha C. Jerrard and many, if not all, incurred since the decease of their testatrix.

The Judge of Probate refused the allowance of the amendment and disallowed the account.   From the decree of the Judge of Probate, the executors appealed alleging the following reasons of appeal: because it is their right and their duty to file and have allowed this account of the administration by Semantha C. Jerrard of the goods and estate of Simon G. Jerrard, because each of the items in said account were proper and should by said decree have been allowed,

because the petition for the amendment of said account should have been allowed by said decree, and the items contained in said amendment were proper and should have been allowed by said decree.

The case is before this court upon report from the Supreme Court of Probate.

The first item of Schedule B. in the amount of $1030. should be allowed. The delivery of the specific rights and credits is alleged and the administrator de bonis non acknowledges that he received them.

The second item of Schedule B. in amount of $2454.31 is claimed as a lawful credit by right of retainer of assets to meet the balance due upon the note of the testator, Simon G. Jerrard, to the order of the testatrix, Semantha C. Jerrard, of the accounting executors. It appears that this note, dated Jan. 18, 1888, was given for the sum of $3667.30. April 28, 1891, the testator conveyed to his wife, the payee, his homestead farm and two other parcels of real estate for the recited consideration of $3200, and on the same day the payee endorsed upon the note the payment of $3200. From the date of the note to the day of the death of maker more than twenty-one years had elapsed, from the date of the indorsement to his death nearly eighteen years and to the claim of the right to retain, which was first made manifest to the administrator de bonis non by the filing of the account in July, 1913, more than twenty-five years.

As to the actual consideration for the note, there is no evidence. Whether Mrs. Jerrard was at its date possessed of any property is open to great doubt. Her niece, Mrs. Cornforth, one of the executors, testifies that she once inherited three hundred and some odd dollars and does not know that she ever acquired any other means.

It seems that at the time the note of January 18, 1888 was made, Simon G. Jerrard was liable upon a note of large amount and was holding the office of Sheriff of Penobscot wherein he was liable at any time to be involved in litigation.

The indorsement upon the note of the expressed consideration for the conveyance of the farm by her husband to Semantha C. Jerrard was, as already noted, in her own hand and there is no evidence tending to show that the husband was at any time aware of it.

There is no evidence tending to show that Mrs. Jerrard in her lifetime intended to exercise the right of retainer but there is evidence that her executors claimed to exercise the right.

Under these circumstances, it is at least doubtful if Mrs. Jerrard considered the note an existing liability against the estate of her husband or intended ever to enforce it.

But on the sixteenth day of August, 1911, less than four months before she died, she made a will in exercise of the power of appointment given by the will of her husband whereby she gave the sum of $4000. to the Home for Aged Women of Bangor.   This will she confirmed two months later.   By his will the sum so given was not to exceed "three fourths part of what may remain of my estate at her decease."   If the account of her administration rendered by her executors is correct and she regarded the note enforcible, her husband's estate remaining was but little more than one thousand dollars and her will becomes a reproach to her husband's memory.   On the other hand if there be deducted from the rights and credits ($6696.46) shown by the inventory of her estate, the notes and interest thereon received by Mrs. Jerrard upon the sale of her farm ($3455.75) and the bank deposit claimed to be her own ($157.65) there remains the sum of $3083.06.   If to this sum be added the assets ($1030) turned over to the administrator d. b. n. c. t. a. we have the sum of $4113.06. If to this be added $500. given the husband of Mrs. Cornforth previously to the making of her second will and the principal of a note for $500. given Mrs. Cornforth on the day the will was executed (112 Maine, 113, which it is agreed may be considered) we have the sum of $5113.06, not far from $5333, the sum to which the husband's estate should have amounted to warrant the exercise of the power of appointment in the sum of $4000.   She could, however, have reached these figures only upon the basis of considering the balance of the note of $3667.30 as not to be enforced.   We conclude that her wills clearly indicate that she did not consider the note an existing claim against her husband's estate and did not intend to enforce it as such.   *Barstow* v. *Tetlow,* 115 Maine, 96, 106.

The administrator de bonis non with the will annexed of Simon G. Jerrard, claims that he is entitled to receive from the executors of the will of Semantha C. Jerrard, the balance of the assets of the estate of the former, as shown by their account, less the amount of $1030. already paid him.

In *Hall* v. *Otis,* 71 Maine, 326, 330, the will under which the controversy arose was not dissimilar to that of Simon G. Jerrard.   The wife was given the residue of the estate for life, with power of disposal

with remainder over upon her decease of what then remained to be divided among his surviving brothers and sisters. She was named executrix. Proceedings in equity were commenced by the administrator d. b. n. c. t. a. against the executor of the deceased widow. After a construction of the will to the effect that the brothers and sisters surviving are entitled to what remained the court says; "We think . . . . : that his administrator is entitled to all that portion of Daniel E. Hall's [the testator's] Estate (including the proceeds of property sold by his widow) which had not been expended at the time of her decease."

In *Hatch* v. *Caine*, a bill in equity for the recovery of a sum of money in a Savings Bank which plaintiff claimed was a part of the estate of Joseph Storer, deceased testator, whose administrator d. b. n. c. t. a. brings the bill against the executrix of the widow of testator. The will was substantially like those in the foregoing cases and in the case under consideration, with remainder over to a charitable institution. The court concludes its opinion as follows:

"It is settled law in this State that, under wills similar to the one now before us, the widow takes only a life estate, and that whatever remains of the estate at her decease, goes to the beneficiaries named in the will; and that a bill in equity may be maintained by the administrator de bonis non cum testamento annexo, to obtain possession of the remainder." *Hatch* v. *Caine*, 86 Maine, 282, 284.

The case of *Small* v. *Thompson*, arose under a will of very like character in which provision is made for the payment from the property remaining at the decease of the life tenant, the widow of the testator, of her debts and funeral expenses. The appellant in the Supreme Court of Probate was the administrator d. b. n. c. t. a. of the testator and the appellee the executor of the will of the deceased life tenant. The case was before this court upon the exceptions of the appellee. The Supreme Court of Probate found that a portion of the estate of the testator remained in the hands of the life tenant and executrix at the time of her decease and decreed that the appellee be charged with the personal property in question, which may be subjected to the charges of administration not actually paid by the executrix in her lifetime and then paid or delivered to the administrator of the testator de bonis non by him to be applied to the payment of the debts of the life tenant and her funeral expenses,

the charges of administration and then distributed among the heirs at law of the testator as provided in his will. The exceptions were overruled. *Small* v. *Thompson*, 92 Maine, 539, 543, 544.

The right and duty of an administrator of a deceased administrator to account in the Probate Court for the benefit of his intestate, were early recognized by this court. *Nowell* v. *Nowell*, 2 Maine, 75, 81. The same case indicates by fair inference that the accounting is limited to acts done by the deceased representative in his lifetime and that the administrator of the latter can proceed no further in the administration of the estate of the first intestate. In harmony with the case last cited is *Small* v. *Thompson*, 92 Maine, 539, 545.

By statute it is provided that "The executor of an executor has no authority, as such, to administer the estate of the first testator; but on the death of the sole or surviving executor of any last will, administration of said estate not already administered may be granted with the will annexed, to such person as the judge thinks fit." R. S., (1916) Chap. 68, Sec. 27; Laws Mass., 1783, Chap. 24, Sec. 10; Public Laws of Maine, 1821, Chap. LI, Sec. 19; See *Prescott* v. *Morse*, 64 Maine, 422. And by R. S., Chap. 68, Sec. 25, the power and duty of administrators d. b. n. are extended to effects not distributed and are no longer restricted to those unadministered. *Walker* v. *Savings Bank*, 113 Maine, 353, 357.

It may be that the conclusions already reached practically dispose of the appeal, but, as the case is reported for the decision of all questions of law and fact involved, it may be incumbent upon the court to reach further conclusions and to make further suggestions, which will guide the Supreme Court of Probate in passing upon the account to which we must refer the allowance or disallowance of the particular items, as well by reason of lack of evidence to determine as to many of the items, as because we do not think that by reporting an appeal from the decree of the Judge of Probate this court can be called upon, among other things, to pass upon all the items of a disallowed account. It has none of the powers to employ the instrumentalities which other courts may invoke in such cases. See *Crocker* v. *Crocker*, 43 Maine, 561, 562; *Fessenden, Appellant*, 77 Maine, 98, 99.

These conclusions or suggestions involve a construction of the final, or tenth item of the will of Simon G. Jerrard, see *Small* v. *Thompson*, 92 Maine, 537, 544, which provides that "whatever may remain of my estate at the decease of my wife, not disposed of by or under the fore-

going provisions of this will, after paying all her just debts, funeral expenses and the costs of administration, I give, devise and bequeath as follows." Then follow the names of the legatees and the proportions in which they are to take. We conclude upon the whole will and its evident purpose that the testator intended by the tenth item to give to the legatees named whatever of his estate remained in the hands of his wife at her decease, not used and disposed of by his wife, after the payment of the legacies made payable upon her decease and the bequest to the Home for Aged Women less the amount required to pay her just debts, funeral expenses and the costs of administration. Her debts paid by the executors of her will cannot be included in the account of these executors in their account of her administration of her husband's will. This necessarily follows from the conclusion, already reached, that their payment devolved on his administrator de bonis non. In the account no charge of funeral expenses is made.

Numerous charges purporting to be the expenses of the administration of her estate contracted by her executors appear in their account. To what extent they are a charge upon the estate of Simon G. Jerrard depends upon the meaning of the words used in the tenth item of his will, "the costs of administration." Considering, as before, the whole will and the evident purpose of the testator and the circumstances revealed by the evidence, we think the expression quoted refers to the expense of administering his own estate by his administrator de bonis non, any unpaid expense of administration incurred by his executrix in her life time (and there appears to be no charge for such expenses) and the cost of the probate and allowance of such will or wills of his widow as were made in execution of the power of appointment given her by the ninth item of his will and that expenses of the administration under her wills arising from litigation or otherwise concerning her own property and estate were not intended to be included. It is significant that the expenses of the litigation in *Crosby* v. *Cornforth*, 112 Maine, 109, 115, were ordered paid from her estate. The court in that case must have acted with full knowledge and advisedly as it had before it all the wills both that of Simon G. Jerrard and those of his wife. The controversy in that case concerned only her own estate. Be that as it may, we think it clear that what ever expenses of administration arise from the probate and allowance of her wills are not to be allowed, except the nominal fees and expenses attending the allowance of her first will, nor should they appear in the

account of the executrix of Simon G. Jerrard's will rendered by her executors. They are to be paid by, and credited in the account of, the administrator de bonis non.

For the same reasons this court does not pass upon the motion to amend. It comprises many items. The facts should be determined in the Supreme Court of Probate and the various items sought by amendment to be added to the account, be allowed or disallowed in accordance with the law declared in this opinion.

The allusion, necessarily made in the discussion of this case, to the right of retainer, is not to be regarded as a recognition of its existence in this jurisdiction. Whether or not, in view of our statutory provisions regarding the allowance of the private claims of executors and administrators, they may still exercise the common law right of retainer is not decided.

*Appeal sustained with costs.*

*Remanded to Supreme Court of*
*Probate for further action in*
*accordance with this opinion.*